# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES KARLOWICZ,** | : | No. 3:20cv488 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| | : | |
| **AMERICAN STATES** | : | |
| **INSURANCE COMPANY,** | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is the motion for summary judgment (Doc. 30) filed by Defendant American States Insurance Company. The motion has been fully briefed and the matter is ripe for disposition.

**Background**[1]

Plaintiff James Karlowicz was involved in a motor vehicle accident on May 3, 2018. At the time of the accident, Plaintiff had an automobile insurance policy identified as policy number K2980856 ("the policy") with defendant. The policy provided first-party medical benefits with limits of $50,000. (Doc. 30, Exh. 1).

Due to the accident, plaintiff suffered physical injury, and he made a claim for first-party medical benefits under the policy. Defendant received medical bills from plaintiff's treatment related to the accident, then adjusted and paid some of them per the terms of the policy.

---

[1] Citations to the record are omitted where the parties do not contest general background facts. Where the parties have not provided a relevant detail in their statements of fact (Docs. 32, 34), or if there is a dispute, a citation to the record is included.

On or about November 4, 2019, defendant received bills, records, and office notes reflecting treatment rendered to plaintiff by Northeastern Rehabilitation Associates ("Northeast Rehab"). On November 7, 2019, defendant denied payment of bills from Northeast Rehab. By letter dated January 23, 2020, counsel for plaintiff questioned the non-payment of these Northeast Rehab bills. By email dated January 24, 2020, defendant explained the basis of the denial to counsel for plaintiff. Per that email, benefits were denied due to a report from Northeast Rehab's physician that plaintiff "reported a new onset of neck pain after a motor vehicle accident on 8/4/19." (Doc. 30, Exh. 7). The parties do not dispute that the physician later corrected the accident date to May 3, 2018.

At the time, however, counsel for plaintiff followed up with emails questioning the denial of payment and represented to defendant that the accident date in the physician's record was in error. On January 28, 2020, a representative from defendant spoke with a representative from Northeast Rehab about the bills in question. On February 10, 2020, defendant advised counsel for Plaintiff that Northeast Rehab was contacted and that they were awaiting receipt of an addendum to confirm and correct the error. That same day, Northeast Rehab faxed defendant an addendum issued by the physician dated January 15, 2020, correcting the accident date in the medical record from August 4, 2019 to

May 3, 2018. (Doc. 30, Exh. 2).  Defendant then adjusted and paid the remaining Northeast Rehab bills. (Doc. 30, Exh. 4).

Based upon the above conduct by defendant, Plaintiff filed the instant lawsuit. The complaint (Doc. 2-1) contains the following causes of action: Count I breach of contract; Count II, a claim for benefits under Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 25 PA. CONS. STAT. § 1716; Count III, bad faith pursuant to 42 PA. STAT. § 8371 ("Section 8371"); and Count IV, a claim under Pennsylvania's Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 PA. STAT. § 201–2, *et seq*.

Plaintiff filed suit in the Luzerne County Court of Common Pleas on March 12, 2020.  Defendant removed the case to this court (Doc. 1) on March 26, 2020.  Defendant then filed a motion to dismiss (Doc. 6) Counts II-IV of the Complaint on April 7, 2020.  Plaintiff filed a motion for remand (Doc. 18) on June 24, 2020.  The motion to dismiss and motion to remand were referred to Magistrate Judge Martin C. Carlson (Doc. 22) on July 14, 2020.  Magistrate Judge Carlson issued his report and recommendation on September 18, 2020 (Doc. 23), recommending that Plaintiff's breach of contract claim in Count I be merged with Count II but that the motion to dismiss be otherwise denied.  The magistrate judge further recommended that plaintiff's motion for remand be denied.  Neither

party objected to the report and recommendation and the Honorable Robert D. Mariani adopted it by order dated October 20, 2020. (Doc. 24).

After a period of discovery, defendant filed a motion for summary judgment seeking the dismissal of all claims. The parties briefed their respective positions, bringing this case to its present posture. This matter was subsequently reassigned on November 7, 2023.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a citizen of Luzerne County, Pennsylvania. (Doc. 2-1 at ¶ 1). Defendant is incorporated under the laws of the State of Indiana with its principal place of business in the Commonwealth of Massachusetts. (Doc. 1 at ¶ 8). Additionally, the amount in controversy exceeds $75,000. Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States [.]"); 28 U.S.C. § 1441 (A defendant can generally remove a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute). As a federal court sitting in diversity, the

substantive law of Pennsylvania applies to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

**Standard of Review**

Granting summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " See Knabe v. Boury Corp., 114 F.3d 407, 410 (3d Cir. 1997) n. 4 (3d Cir.1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit

under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendant's motion raises three issues: 1) whether Plaintiff has produced sufficient evidence that defendant breached the policy or that he has suffered any damages; 2) whether Plaintiff can establish that defendant acted in bad faith in the handling of his first party benefits claim; and 3) whether the UTPCPL applies to the handling of insurance claims.  The court will address each of these issues in turn.

**1. Breach of Contract**

Counts I and II of Plaintiff's complaint allege that defendant breached the contract when they refused to pay first party medical benefits under the policy as a result of the May 3, 2018 accident.  As noted above, the court previously

merged Plaintiff's breach of contract action in Count I with his claim for payment under Section 1716 of the MVFRL in Count II into a single, overarching claim. (Doc. 24).

To recover on a breach of contract claim under Pennsylvania law, a plaintiff must show: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages. <u>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.</u>, 137 A.3d 1247, 1258 (Pa. 2016)(citation omitted).

On the second portion of merged claims, Section 1716 of the MVFRL provides that:

> Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 PA. CONS. STAT. § 1716 (1984).

Neither party disputes the essential terms of the policy. However, defendant argues that the policy was not breached because it ultimately paid

7

medical benefits for plaintiff's treatment with Northeast Rehab.  Defendant also argues that it paid benefits after reasonable proof.

Plaintiff does not contest that defendant eventually paid medical benefits after the physician at Northeast Rehab issued an addendum correcting the date of plaintiff's accident in the medical records.  Rather, plaintiff focuses on the initial denial and three-month delay of payment, arguing that defendant would have been obligated to pay medical benefits under the policy even if plaintiff had been involved in a subsequent accident in August 2019.  Plaintiff also focuses on aspects of the investigation by defendant into plaintiff's treatment at Northeast Rehab, which he argues was lacking.  Plaintiff asserts the delay in payment was caused by what he describes as lapses in communication by claims representatives to his counsel.

In light of the above, there are material factual disputes as to when defendant had "reasonable proof" and whether benefits were "overdue" under Section 1716 which would preclude summary judgment.

There are other points in dispute.  In opposition to the motion for summary judgment, plaintiff also provided portions of the deposition of Kathy Redman, a claims professional on the claim. (Doc. 33, Exh. B, Dep. of K. Redman 03/02/21).  In addition to the requirements set forth in Section 1716, Ms. Redman's testimony identifies other implied duties and obligations under the policy.  For

example, Ms. Redman agreed that all benefits not in dispute must be paid within thirty days.  Id. at 5.  Ms. Redman also agreed that claims must not be denied based on insufficient information, speculation, or biased information.  Id. at 5-6.  Furthermore, Ms. Redman agreed that claims must be investigated objectively and thoroughly.  Id. at 11-12.  She additionally agreed that she had a duty to deal fairly and in good faith with plaintiff.  Id.

Although defendant emphasizes that medical benefits were eventually paid, defendant also admits that it initially denied benefits for treatment related to the accident at Northeast Rehab before paying those bills three months after they were initially submitted for payment.  Defendant takes the position that, by contacting Northeast Rehab for an addendum in January 2020 and then paying in February 2020 when the addendum was received, it handled plaintiff's claim satisfactorily and in good faith.  Plaintiff, on the other hand, can point to evidence that his medical benefits were denied summarily and without any initial investigation, as further discussed below.  He can also put forth evidence that his medical benefits were not paid until his counsel prompted defendant to investigate the discrepancy in the Northeast Rehab records.  There thus remains a factual dispute as to whether any implied duties in the contract were breached.

Defendant argues further that plaintiff did not suffer any damages.  However, if plaintiff proves a breach of a contract or breach of contractual duty at

9

trial, but can show no damages from that breach, he is entitled to at least recover nominal damages under Pennsylvania law. Wolfe v. Allstate Prop. & Cas. Ins. Co., 790 F.3d 487, 497 (3d Cir. 2015)(citing Thorsen v. Iron & Glass Bank, 476 A.2d 928, 931 (Pa. Super. Ct. 1984))(additional citations omitted). Thus, the motion for summary judgment premised on plaintiff's alleged lack of damages must be denied as a matter of law.

### 2. Bad Faith

Count III of plaintiff's complaint asserts a cause of action for bad faith under Section 8371. Recovery on a breach of contract claim and statutory bad faith claim are entirely independent of one another. Wolfe, 790 F.3d at 499, n. 10. Although similar facts might support the different claims, "[a] bad faith action under section 8371 is neither related to nor dependent on the underlying contract claim against the insurer." Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1039, n. 5 (Pa. Super. Ct. 1999) (citation omitted).

Section 8371 itself does not define bad faith. Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364, 372 (Pa. 2017). Courts have generally defined the term as " 'any frivolous or unfounded refusal to pay proceeds of a policy.' " Id., 170 A.3d at 373 (quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); see also Wolfe, 790 F.3d at 498 (predicting that the

Pennsylvania Supreme Court would follow the definition of bad faith set forth in Terletsky).

In order to recover under Section 8371, "the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." Rancosky, 170 A.3d at 365 (adopting the test set forth in Terletsky, 649 A.2d at 688).

Under the first prong adopted in Rancosky, the question of "whether the insurer had a reasonable basis for denying benefits is an objective inquiry into whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented." 170 A.3d at 374. Under the second prong, "proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for demonstrating bad faith[,]" and evidence of "the insurer's subjective motive of self-interest or ill-will, while perhaps probative of the second prong of the above test, is not a necessary prerequisite to succeeding in a bad faith claim." Id. at 377.

Moreover, "[c]laims of bad faith are fact specific and depend on the conduct of the insurer toward its insured." Wenk v. State Farm Fire & Cas. Co., 228 A.3d 540, 547 (Pa. Super. Ct. 2020), app. denied, 242 A.3d 309 (Pa. 2020) (citation omitted).

11

In this case, Ms. Redman testified that she denied the medical bills from Northeast Rehab solely on the basis of the inaccurate medical record. (Doc. 33, Exh. B, Dep. of K. Redman 03/02/21 at 25-26).  Per Ms. Redman, she did not contact Northeast Rehab by telephone to confirm a new accident but sent an explanation of benefits document to that provider and to plaintiff when denying the bills.  Id. at 26.  Ms. Redman testified that, in addition to reviewing the record, she also searched a claims database to see if plaintiff had any subsequent losses[2].  Id. at 29-30.  Ms. Redman did not contact plaintiff or his attorney or contact Northeast Rehab other than issuing the denial, per her testimony.  Id. at 30.  Ms. Redman also testified that it was not proper to be predisposed to a particular disposition and that claims decisions should be made without regard to the effect on defendant's profitability.  Id. at 10.

Ms. Redman also testified that an email from plaintiff's counsel dated January 27, 2020 regarding the unpaid bills and the mistake in Northeast Rehab's record were not logged into the claims system.  Id. at 40.  The claims log also indicates that defendant did not respond to plaintiff's counsel's emails

---

[2] It does not appear from the deposition transcript that counsel for plaintiff asked Redman what the claims database search showed.  In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 288 (3d Cir. 2018) (citing Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006)). Based on the other facts of record, a reasonable inference may be made that the database did not show any subsequent claims by plaintiff for an August 2019 accident.

from January 27, 2020, per review during Ms. Redman's deposition. Id. at 41. Similarly, an email from plaintiff's counsel dated February 4, 2020 was not logged in the claims system, nor was a response near that date noted. Id. at 40-41. Rather, Redman testified that the response to plaintiff's counsel was sent on February 10, 2020 and advised that defendant was waiting for Northeast Rehab to submit an addendum. Id. at 43-44.  As noted above, the addendum from Northeast Rehab correcting the accident date was faxed to defendant on February 10, 2020, but was dated January 15, 2020. (Doc. 30, Exh. 2).

Looking at the above facts in a light most favorable to plaintiff, the testimony by Ms. Redman may persuade a factfinder that defendant lacked an objective, reasonable basis in denying payment of plaintiff's medical bills for several months and knew of or recklessly disregarded its lack of reasonable basis for doing so.  The parties have different perspectives on what the evidence shows.  But under the standard for summary judgment, plaintiff has sufficient evidence, if credited by the factfinder, to support his Section 8371 claim. Moreover, Ms. Redman's credibility as to the conduct and knowledge of the insurer remains a determination to be resolved.  Summary judgment in favor of defendant on the bad faith claim is thus also inappropriate.

### 3. UTPCPL

Finally, defendant moves for summary judgment on Count IV of plaintiff's complaint, which asserts a claim under the UTPCPL.

As summarized:

> Enacted in 1968, the UTPCPL is Pennsylvania's consumer protection law. "The UTPCPL was created to even the bargaining power between consumers and sellers in commercial transactions, and to promote that objective, it aims to protect the consumers of the Commonwealth against fraud and unfair or deceptive business practices." Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC, 648 Pa. 604, 194 A.3d 1010, 1023 (2018)[(further citations and explanatory parentheticals omitted)].
>
> As a remedial statute, "the UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." Ash v. Cont'l Ins. Co., 593 Pa. 523, 932 A.2d 877, 881 (2007).

Commonwealth v. Chesapeake Energy Corp., 247 A.3d 934, 936 (Pa. 2021) (footnote omitted and formatting modified).

Despite the liberal construction and expansion of the UTPCPL by recent decisions of the Supreme Court of Pennsylvania, the Superior Court of Pennsylvania has held that the UTPCPL applies only to the **sale** of an insurance policy, not to the **handling** of insurance claims. Wenk, 228 A.3d at 550 (citing Neustein v. Gov't Emps. Ins. Co., No. 18-CV-645, 2018 WL 6603640, at *2 (W.D. Pa. Nov. 29, 2018), report and recommendation adopted, 2018 WL 6601876

(W.D. Pa. Dec. 17, 2018)(emphasis in original).  Moreover, Section 8371 provides the "exclusive statutory remedy applicable to claims handling[3]."  Id.

Other decisions in this district stand for the proposition that an insurer's failure to pay benefits is nonfeasance, rather than malfeasance, and is therefore not actionable under the UTPCPL. Klinger v. State Farm Mut. Auto. Ins. Co., 895 F.Supp. 709, 717 (M.D. Pa. 1995) (citing Gordon v. Pa. Blue Shield, 548 A.2d 600, 602 (Pa. Super. 1998)); see also Defuso v. State Farm Mut. Auto. Ins. Co., No. CV 3:21-507, 2022 WL 837491, at *4 (M.D. Pa. Mar. 21, 2022)(Mannion, J.)("a claim for failure to act on an insurance claim in a timely manner is not actionable under the UTPCPL, as it is a claim for nonfeasance.")(citation omitted).

---

[3] "Although we are not bound in a diversity case to follow decisions of a state intermediate appellate court, [...] such decisions are not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Jewelcor Inc. v. Karfunkel, 517 F.3d 672, 676, n. 4 (3d Cir. 2008)(citation omitted).

In Wenk, the Superior Court relied on an opinion about the UTPCPL from a federal magistrate judge as adopted by an order of a district judge, so as not to create a situation where litigants would forum shop for different results and because the federal courts had previously addressed these questions. 228 A.3d at 550, n. 9.  The Supreme Court of Pennsylvania denied the plaintiffs' petition for allowance of appeal, 663 Pa. 356, and never took up these determinations.

Thus, the court will rely on the Superior Court's statements in Wenk due to the relative recentness of the decision and because no other persuasive data indicates that the highest court of Pennsylvania would decide otherwise.

Accordingly, the court will grant the motion for summary judgment in favor of defendant on plaintiff's UTPCPL claim as a matter of law.

**Conclusion**

For the reasons set forth above, the motion for summary judgment by defendant (Doc. 30) will be granted with regard to the UTPCPL claim in Count IV of plaintiff's complaint. The motion will be denied with respect to plaintiff's breach of contract and statutory bad faith claims in Counts I-III. An appropriate order will issue.

Date: __11/27/2023_____

BY THE COURT:

_s/ Julia K. Munley_____
**JUDGE JULIA K. MUNLEY**
**United States District Court**